**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, | |
| Plaintiff, | |
| v. | Civil Action No. 25-cv-3553 |
| U.S. DEPARTMENT OF EDUCATION and LINDA MCMAHON, in her official capacity as Secretary of Education, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Introduction ................................................................................................................... 1

Background ................................................................................................................... 2

I.       The government shutdown leads to a political blame game. ................................ 2

II.      The Department inserts political messaging into employees' out-of-office emails. .......... 3

III.     The Department's revised messages still contain partisan political language. ................... 6

IV.      Plaintiff AFGE represents affected employees. .................................................... 7

Legal Standard ............................................................................................................. 8

Argument ..................................................................................................................... 8

I.       Plaintiff has standing ......................................................................................... 8

II.      This controversy is not mooted by the Department's voluntary revision of the out-of-office messages. .................................................................................................... 9

III.     The First Amendment prohibits the Department from compelling its employees to speak on a political issue outside their employment duties. ..................................... 10

IV.      This Court has jurisdiction over Plaintiff's claim. ............................................. 18

V.       A declaratory judgment and permanent injunctive relief are appropriate remedies. ........ 21

Conclusion ................................................................................................................. 23

## INTRODUCTION

Who bears the blame for the ongoing government shutdown is a heavily disputed political issue. In an unprecedented effort to tilt the public debate in its favor, the Trump Administration has leveraged its control of federal agencies to amplify the message that its political opponents are to blame. This whole-of-government approach to partisan political messaging goes far beyond the traditional use of the presidential bully pulpit.

Especially pernicious is the Administration's co-opting of the voices of rank-and-file civil servants in support of its political agenda. The Department of Education has done so by replacing its employees' automated out-of-office email responses with partisan language that blames "Democrat Senators" for the shutdown. Now, whenever somebody sends an email to a furloughed Department of Education employee, they will receive an automatic response—sent in the name of that employee—that parrots the Trump Administration's political talking points.

Forcing employees to attach their names to partisan statements—much less attaching employees' names to such statements without their knowledge or consent—is a gross violation of their First Amendment rights. Neither the government nor the public has a legitimate interest in compelling partisan speech, and ordinary out-of-office messages would suffice to serve all legitimate government interests. Accordingly, Plaintiff, the American Federation of Government Employees (AFGE), seeks declaratory and permanent injunctive relief on behalf of its members who are federal civil service Department of Education employees.

In response to this suit, the Department of Education revised the out-of-office messages to remove first-person language, but it retained the language blaming "Democrat Senators." Judicial relief remains necessary to declare unlawful and enjoin the revised version of the message, which continues to violate the First Amendment; to declare the unlawfulness of the earlier version of the message; to enjoin Defendants from any further use of the earlier version of

1

the message; and to correct for the sending of the earlier version of the message under employees' first-person voices. This relief is necessary to remedy the Department of Education's unlawful efforts to turn its nonpartisan civil servants into unwilling political spokespersons.

## BACKGROUND

### I.    The government shutdown leads to a political blame game.

A lapse in appropriations, commonly known as a government shutdown, began on October 1, 2025. Even before the shutdown, the Trump Administration began to blame their political opponents in the Democratic Party for Congress's failure to pass a funding bill that would keep the government open.[1] The political blame game only intensified once the government shut down. Pointing the finger at the opposing party is typical politician behavior when there is a government shutdown. But what is unprecedented is how the Trump Administration has leveraged its control of federal agencies in a whole-of-government campaign to try to tilt the public debate in its favor.

Soon after the lapse in appropriations, multiple federal agencies posted highly partisan messages on their official websites. The following screenshot, from the official website of the Department of Housing and Urban Development, is just one example.[2]

---

[1] *E.g.*, Riley Beggin et al., *White House begins plan for mass firings if there's a government shutdown*, Wash. Post (Sept. 25, 2025), https://perma.cc/G78V-DYCQ ("President Donald Trump told reporters Thursday that there 'could be' a shutdown, which he preemptively blamed on Democrats."); Theodoric Meyer & Marianna Sotomayor, *Congress is barreling toward a shutdown, despite the perils*, Wash. Post (Sept. 26, 2025), https://perma.cc/4JRL-5NQ2 ("President Donald Trump has ignored Democrats' demands to negotiate since he canceled a meeting with Democratic leaders in Congress this week, setting the stage for the first government shutdown since 2019 absent a breakthrough. Each side has insisted voters will blame the other, giving them little incentive to compromise.").

[2] U.S. Dep't of Hous. and Urb. Dev., *The Radical Left in Congress shut down the government. HUD will use available resources to help Americans in need*, https://perma.cc/6B9N-JVLN; *see also* Compl. ¶¶ 17–23 (listing other examples).



The coordinated messaging campaign did not stop there. Many agencies also sent mass emails to their own employees blaming Democrats for the shutdown.[3]

## II.    **The Department inserts political messaging into employees' out-of-office emails.**

The Department of Education took part in this whole-of-government messaging effort, but went even further than other agencies, by conscripting individual employees into becoming unwilling mouthpieces for the partisan messages.[4] It did so by inserting partisan rhetoric into federal employees' automatic out-of-office email messages.

When the government shut down on October 1, 2025, some Department of Education employees were already on administrative leave because of pending reduction-in-force notices. *E.g.*, E. Doe Decl. ¶ 5; G. Doe Decl. ¶ 5; J. Doe Decl. ¶ 5; L. Doe Decl. ¶ 5; P. Doe Decl. ¶ 5.

---

[3] Joey Heckman, *Mass email tells federal employees not to blame Trump for government shutdown*, Fed. News Network (Sept. 30, 2025), https://perma.cc/5UVK-6R4V.

[4] *E.g.*, Eileen Sullivan & Michael C. Bender, *Partisan Language Inserted Into Education Dept. Workers' Automated Emails*, N.Y. Times (Oct. 2, 2025), https://perma.cc/CFQ6-LVBS; Sunlen Serfaty et al., *Out-of-office messages blaming Democrats for shutdown sent on behalf of some federal workers without their consent*, CNN (Oct. 2, 2025), https://perma.cc/5RHC-KQJ2.

Other employees were not on leave at the time but were notified that they would be put on furlough due to the lack of funding. *E.g.*, D. Doe Decl. ¶ 4; F. Doe Decl. ¶ 4; K. Doe. Decl. ¶ 5; M. Doe Decl.¶ 5; N. Doe Decl. ¶ 5; Q. Doe Decl. ¶ 5. According to the Department's contingency plan for the lapse in appropriations, about 87% of the Department's employees were expected to be furloughed.[5]

In general, employees on administrative leave had already set up automated out-of-office responses for their government email addresses stating that they were unavailable. The typical language in those automatic replies was factual and nonpartisan. E. Doe Decl. ¶ 5; J. Doe Decl. ¶ 5; L. Doe Decl. ¶ 5.

Furloughed employees who were not already on leave were instructed to conduct orderly shutdown activities. F. Doe Decl. ¶ 4; M. Doe Decl. ¶ 5. The Department of Education's Chief Human Capital Officer provided those instructions as part of the furlough notice. C. Doe Decl. ¶ 6 & Exs. A & B; M. Doe Decl. ¶¶ 5–6. According to those instructions, furloughed employees were allowed up to four hours of work to perform orderly shutdown activities, which included setting up automatic out-of-office email responses. *Id.* The Chief Human Capital Officer's instructions included model language for the out-of-office responses that was short, factual, and nonpartisan. *Id.* That model language reflected the type of out-of-office message that one would expect to receive in a professional workplace setting:

> Hello, you have reached the [US Department of Education's Information Resource Center]. We are unable to respond to your request due to a lapse in appropriations for the Department of Education. We will respond to your request when appropriations are enacted. Thank you."

---

[5] Mem. from Linda McMahon, Sec'y of Educ., to Off. of Mgmt. and Budget, Re: *U.S. Department of Education Contingency Plan for Lapse in Fiscal Year (FY) 2026 Appropriations* (Sept. 28, 2025), https://perma.cc/K73P-DVNJ (showing 2,457 employees on board, including the Office of Federal Student Aid, and 2,117 of those employees expected to be furloughed).

*Id.*

Later that day, after setting nonpartisan out-of-office messages pursuant to those instructions, many Department of Education employees discovered that the out-of-office language on their government email accounts had been changed. *E.g.*, D. Doe Decl. ¶ 6; E. Doe Decl. ¶ 6; F. Doe Decl. ¶ 5; M. Doe Decl. ¶ 7. The out-of-office messages had been modified to say:

> Thank you for contacting me. On September 19, 2025, the House of Representatives passed H.R. 5371, a clean continuing resolution. Unfortunately, Democrat Senators are blocking passage of H.R. 5371 in the Senate which has led to a lapse in appropriations. Due to the lapse in appropriations I am currently in furlough status. I will respond to emails once government functions resume.

*E.g.*, D. Doe. Decl. ¶ 7; E. Doe Decl. ¶ 9. The modified out-of-office messages used the term "Democrat Senators," which is a pejorative shortening of "Democratic Party."[6] The modified messages were written in the first person, as if the individual employee were conveying a personal message. Making public statements with such partisan language is not ordinarily part of the job responsibilities of civil servants. *E.g.*, D. Doe Decl. ¶ 3; E. Doe. Decl. ¶ 4; F. Doe Decl. ¶ 3; G. Doe Decl. ¶ 4; I. Doe Decl. ¶ 3; Q. Doe Decl. ¶ 11.

Department employees who were on administrative leave when the shutdown started do not have access to their government equipment or email addresses. E. Doe. Decl. ¶ 5; G. Doe Decl. ¶ 5; J. Doe Decl. ¶ 5; L Doe Decl. ¶ 5. Those employees have had no ability to change the out-of-office messages being sent out under their name. E. Doe Decl. ¶ 11; G. Doe Decl. ¶ 11; J. Doe Decl. ¶ 11; L. Doe Decl. ¶ 11.

---

[6] Eileen Sullivan & Chris Cameron, *Federal Agencies Use Official Websites to Blame Democrats for Shutdown*, N.Y. Times (Oct. 1, 2025), https://perma.cc/5JW9-TC3S; *see also* Julie Carr Smyth, *What's in an adjective? 'Democrat Party' label on the rise*, AP News (Feb. 27, 2021), https://perma.cc/GR8L-ENLY.

Some Department employees who still had access to their government equipment changed their out-of-office messages back to nonpartisan language that did not place blame for the shutdown. F. Doe Decl. ¶¶ 7–10. Those employees later found that their out-of-office messages had been changed yet again, without their consent, to reinclude the partisan language. *Id.*[7] One employee was instructed by their supervisor not to try to change the out-of-office message set by the Department. M. Doe Decl. ¶ 7.

Department of Education employees regularly use their government email addresses to communicate with external stakeholders like school district representatives, college administrators, parents, students, vendors, and other members of the public. D. Doe Decl. ¶ 9; E. Doe Decl. ¶ 11; F. Doe Decl. ¶ 11; G. Doe Decl. ¶ 11; I. Doe Decl. ¶ 10; J. Doe Decl. ¶ 11; M. Doe Decl. ¶¶ 12–13; N. Doe Decl. ¶ 11. Any member of the public who tried to reach a furloughed Department of Education employee automatically received a response, purportedly in the employee's own voice, blaming "Democrat Senators" for that employee's inability to respond.

### III.    The Department's revised messages still contain partisan political language.

Plaintiff filed its complaint on Friday, October 3, 2025. ECF No. 1. Immediately upon filing the complaint, Plaintiff sent a cease-and-desist letter to inform the Department of Justice that Plaintiff would move for a temporary restraining order if the Department of Education did not cease its unlawful behavior by Monday morning. Ex. 1.

---

[7] Leah Feiger & Vittoria Elliott, *Government Workers Say Their Out-of-Office Replies Were Forcibly Changed to Blame Democrats for Shutdown*, WIRED (Oct. 2, 2025), https://perma.cc/QCF3-CGFS ("Some [Department of Education] employees changed their responses back to the more neutral language, only to have it changed yet again to the partisan response, multiple sources tell WIRED.").

On Monday, October 6, the Department of Justice informed Plaintiff that the Department of Education was changing the out-of-office messages of its furloughed employees to the following:

> The Department employee you have contacted is currently in furlough status. On September 19, 2025, the House of Representatives passed H.R. 5371, a clean continuing resolution. Unfortunately, Democrat Senators are blocking passage of H.R. 5371 in the Senate which has led to a lapse in appropriations. The employee you have contacted will respond to emails once government functions resume.

*Id.* The Department of Justice stated its position that "[t]he out-of-office message [as revised] is no longer written in the first person and thus no longer conveys that the message is on behalf of the person in their individual or personal capacity, as opposed to the Department itself (assuming it ever did)." *Id.* Accordingly, the Department of Justice stated its view that "this change obviates the need to seek emergency injunctive relief from the court." *Id.*

Individual employee's email accounts still respond with this revised partisan message in response to any email that they receive to that individual address. The Department continues to harm the personal reputations of individual employees by causing partisan political out-of-office responses to be sent to anyone who attempts to reach those civil service employees. *See* A. Doe Decl. ¶¶ 10–12; Q. Doe Decl. ¶¶ 12–14.

## IV.    Plaintiff AFGE represents affected employees.

AFGE is a labor organization and unincorporated association representing approximately 800,000 federal employees through its affiliated councils and locals in every state in the United States. Kelley Decl. ¶ 2. Through its affiliate AFGE Local 252, AFGE has more than 1,700 dues-paying members who are employees of the Department of Education. *Id.* ¶ 7. AFGE members employed by the Department have been harmed by having their out-of-office messages involuntarily changed as described above. *Id.* ¶¶ 8–11.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine only if a reasonable fact-finder could find for the nonmoving party; a fact is material only if it is capable of affecting the outcome of the litigation." *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Forest Hill Health Care Ctr., Inc.*, 170 F. Supp. 3d 16, 19 (D.D.C. 2016). In assessing a summary judgment motion, the court must view the facts in the light most favorable to the opposing party. *Id.*

## ARGUMENT

### I.   Plaintiff has standing.

A union, like any other membership association, has standing to sue on behalf of its members when it can establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*, 429 F.3d 1130, 1135 (D.C. Cir. 2005)). AFGE satisfies all three criteria.

First, all AFGE members subject to the involuntary partisan edits to their out-of-office messages would otherwise have standing to sue in their own right. They have suffered, and are suffering, a constitutional injury in fact that was caused by the Department's actions and is redressable by relief from this Court. *See Utility Workers Union of Am. Local 464 v. FERC*, 896 F.3d 573, 577 (D.C. Cir. 2018). It is "self-evident" that "compelled speech in violation of the First Amendment" constitutes a cognizable "constitutional injury." *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA*, 573 F. Supp. 3d 324, 337 (D.D.C. 2021).

8

Causation and redressability are equally self-evident: The Department directly edited its employees' out-of-office messages to insert partisan political speech, and Plaintiff's members' injuries would be redressed by an order requiring the Department to reverse those edits.

Second, defending the First Amendment rights of its members against compelled partisan speech is germane to AFGE's organizational purpose of organizing and advocating on behalf of its members. Kelley Decl. ¶¶ 4, 8–11.

Third, participation of individual members is not necessary because of the nature of Plaintiff's claim, which "seek[s] prospective and injunctive relief, not damages for its members." *Powder River Basin Res. Council v. U.S. Dep't of Interior*, 749 F. Supp. 3d 151, 163 (D.D.C. 2024).[8]

## II.     This controversy is not mooted by the Department's voluntary revision of the out-of-office messages.

The Department's October 6 revision to employees' automatic messages does not lessen Plaintiff's need for declaratory and injunctive relief arising from the original messages. It is well established that "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). The Department cannot avoid the Court's review by "suspend[ing] its challenged conduct"—or, here, altering it—"after being sued." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

---

[8] Even at the merits stage, an association may establish standing while maintaining the anonymity of individual member declarants. *See Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022) (holding that "anonymity is no barrier to standing on this record"). Department of Education employees have filed pseudonymous declarations because of fears about the likelihood of retaliation from their current employer. *E.g.* A. Doe Decl. ¶ 1; B Doe Decl. ¶ 1. *But see* Vaive Decl. ¶ 2 (declaration, not under pseudonym, from recently retired Department employee). The true names of individual declarants provide "no essential information bearing on the injury component of standing." *Advocs. for Highway Safety*, 41 F.4th at 594.

To establish that judicial intervention is no longer warranted, "a defendant must prove no reasonable expectation remains that it will return to [its] old ways," which the Supreme Court has emphasized is a "formidable burden." *Id.* And that rule "holds for governmental defendants no less than for private ones." *Id.* Defendants cannot make that showing here, particularly given their manifest commitment to maintaining partisan political language in employees' out-of-office messages even after Plaintiff filed this suit. In response to Plaintiff's communication upon filing the case, Defendants revised the language in the out-of-office email messages. *See* Ex. 1 (October 6 email from counsel for Defendants). But the voluntary cessation doctrine applies to federal agencies where they "act[ed] in order to avoid litigation." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021). In those situations, "the prospect of manipulation gives [the court] reason to doubt the party's claims that it will not resume the challenged activity once the court dismisses the challenge." *Id.* Thus, even setting aside that the revised language continues to violate employees' First Amendment rights, Defendants cannot evade review of their original unconstitutional conduct by responding to Plaintiff's complaint and cease-and-desist letter with a revision to the challenged partisan political messages.

## III.    The First Amendment prohibits the Department from compelling its employees to speak on a political issue outside their employment duties.

By forcing employees to speak on a partisan political issue against their will, the Department's injection of partisan political opinions into out-of-office messages violates employees' First Amendment rights against compelled speech. This conclusion holds true for both versions of the message. Although the First Amendment gives public employers some latitude to manage the speech of their employees when they speak as part of their official duties, making public statements blaming a political party for failed congressional negotiations is not

part of any employee's job duties. As such, the Department is compelling employee speech that falls outside the scope of their employment, with no legitimate basis.

In response to this suit, the Department modified its conduct by revising the out-of-office messages to remove the first-person language. But the Department continues to automatically send messages from email accounts associated with individual employees, with language blaming "Democrat Senators" for the shutdown. Both the earlier and current versions of the out-of-office messages violate the First Amendment.

**1.** The First Amendment prohibits any law "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment not only protects a person's right to speak their mind but also prevents the government from compelling a person to "to utter what is not in [their] mind." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988) (recognizing that the First Amendment protects "the decision of both what to say and what *not* to say"). Government-compelled speech violates the "principle that freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 61 (2006). "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command." *Janus v. AFSCME*, 585 U.S. 878, 892 (2018).

The First Amendment also protects against forced association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association . . . plainly presupposes a freedom not to associate."); *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 12 (1986) ("[F]orced associations that burden protected speech are impermissible.").

11

First Amendment protections extend to public employees. "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). Public employees retain First Amendment protections against compelled speech as well. *See Janus*, 585 U.S. at 905 ("[P]rominent members of the founding generation condemned laws requiring public employees to affirm or support beliefs with which they disagreed."); *see also Kilborn v. Amiridis*, 131 F.4th 550, 562 (7th Cir. 2025) ("[P]ublic employees receive some measure of protection against compulsion by their employer to endorse messages they find objectionable.").

To be sure, the government does have an interest "as an employer in regulating the speech of its employees" that differs from its interest in regulating the speech of the general public. *Connick*, 461 U.S. at 140. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Rather, "[w]hen an employee engages in speech that is part of the employee's job duties, the employee's words are really the words of the employer." *Janus*, 585 U.S. at 910; *see also id.* at 905 ("[E]mployee speech is largely unprotected if it is part of what the employee is paid to do."); *id.* at 908 ("Of course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message.").

The threshold question is thus whether the speech at issue is within the employee's official duties—in other words, part of what the employee is paid to do—and therefore can be properly regulated by the Department as part of its management of employees. *Id.* at 905. The "proper inquiry" as to whether "conducting the task is within the scope of the employee's

professional duties for First Amendment purposes" is "a practical one." *Garcetti*, 547 U.S. at 424–25.

**2.** The partisan political rhetoric that the Department added to employees' out-of-office messages is plainly not speech within the employees' official duties. As declarants explain, making such statements is not part of their roles as nonpartisan civil servants. *E.g.*, D. Doe Decl. ¶ 3; E. Doe Decl. ¶ 4; F. Doe Decl. ¶ 3; G. Doe Decl. ¶ 4; I. Doe Decl. ¶ 3. Those statements do not become part of employees' job responsibilities because they purport to explain why the employee cannot respond to an email. "The critical question… is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). It is not ordinarily within the scope of the employees' duties to state a political opinion about which party is responsible for a government shutdown.

Reinforcing this point, the Hatch Act provides that "[a]n employee may not engage in political activity while the employee is on duty." 5 U.S.C. § 7324(a)(1). The statute does not define "political activity," but Office of Personnel Management regulations define "political activity" as "an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group." 5 C.F.R. § 734.101. Blaming a particular political party for a shutdown may be considered "an activity directed toward the success or failure of a political party." *Id.* In this vein, the Office of Special Counsel, which enforces the Hatch Act, advises federal employees that pursuant to the Hatch Act, "while at work" they may

not "[u]se any email account or social media to distribute, send, or forward content that advocates for or against a partisan political party."[9]

That employees are likely prohibited from engaging in such activity while "on duty," 5 U.S.C. § 7324(a)(1), reinforces the conclusion that the Department is forcing words into its employees' mouths that are not part of the employees' "official duties," *Janus*, 585 U.S. at 908. Although an "employer may insist that the employee deliver any lawful message" as part of the employee's official duties, *id.*, the Hatch Act makes the lawfulness of the message questionable at best. The Department is thus compelling its employees to speak, not within the scope of their employment, but "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418.

**3.** In cases where a public employer seeks to restrict an employee's personal speech on a matter of concern, courts apply the balancing test from *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under that test, courts balance the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees" against the employee's interests, "as a citizen, in commenting upon matters of public concern." *Janus*, 585 U.S. at 905 (quoting *Harris v. Quinn*, 573 U.S. 616, 653 (2014)).

The *Pickering* balancing test, however, "fits much less well where the government compels speech" rather than restricts speech. *Id.* at 908. In fact, the Supreme Court "ha[s] never applied *Pickering* in such a case." *Id.* The *Pickering* balancing test recognizes that a public employer may be justified in restricting employee speech because "the speech of a public-sector employee may interfere with the effective operation of a government office." *Id.* But when a public employer "commands that its employees mouth a message on its own behalf, the calculus

---

[9] *Federal Employee Hatch Act Information*, U.S. Off. of Special Couns., https://perma.cc/DT2Q-2UEG (under "Prohibited Activities for Less Restricted Employees").

is very different." *Id.* In those situations, the employee's interest in not speaking cannot be outweighed by whatever interest the employer might have. After all, "it is not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree." *Id.* Thus, the Court need not even attempt to balance the employer interest against the employee interest to conclude that the Department is violating the First Amendment by forcing political language into its employees' mouths.

**4.** Even if the *Pickering* balancing test were to apply, however, the Department's actions would be unlawful. The balancing question would be whether the government's "proffered interests justify the heavy burden" that it inflicted on its employees' First Amendment interests. *Id.* at 914. The balance does not favor the government.

As to the first version of partisan out-of-office messages with first-person language ascribed to each individual employee, the messages violated the First Amendment because Defendants had no interests that could justify the imposition on the employees' interests. The Department lacked any legitimate interest in forcing employees to put their own names on political messages that were sent as an auto-response from their accounts to anyone who emailed them while they were furloughed. The burden on the employees' speech and associational rights was particularly heavy because the Department forced employees to speak a political pejorative that associates them with one side of the political debate: "Democrat Senators." The messages purported to personally associate the employees with both a particular political viewpoint and a jarringly unprofessional and arguably unlawful use of an out-of-office message, which threatened employees' individual reputations with people who contacted them by email.

The balance of interests was particularly skewed for the first version of the partisan out-of-office messages, which was written in the first person. By thanking the recipient for

"contacting me" and by making first-person statements about the employee's work status and response timeframe, the message plainly purported to speak in the employee's voice. Because the message was written as if the individual employee were speaking in the first person, it suggested that the language should be ascribed to the employee personally.

Meanwhile, the Department had no legitimate interest in compelling speech that violated the law and exposed the employee to a potential Hatch Act violation. Political leadership in the government can make use of their own voices, among other legitimate ways for them to communicate their own opinions, but they may not co-opt civil servants as pawns in their political blame game. *Wooley*, 430 U.S. at 717 ("[W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message."); *303 Creative LLC v. Elenis*, 600 U.S. 570, 592 (2023) (government may not "coopt an individual's voice for its own purposes").

**5.** The revised version of the partisan out-of-office messages, which currently remains in place, suffers from the same constitutional defect. The Department has removed the first-person language (at least for now), although with no assurance that it will not change the out-of-office messages again. Even without the first-person language, the revised version burdens employees' free speech rights. The partisan language, including the pejorative reference to "Democrat Senators," is still sent from an individual email account associated with an individual speaker, to anyone who attempts to reach an individual furloughed employee.

The government suggests that no First Amendment right is implicated at all because the revised out-of-office messages arguably reflect government speech, not personal speech. Ex. 1. But the Department is still sending out political messages from individual email addresses, under

individual employees' names. The government is still speaking through its employees. Where the government is controlling its employees' speech, the threshold question is whether the messages are unprotected by the First Amendment (because "the employee's words are really the words of the employer," *Janus*, 585 U.S. at 910) or whether they do implicate the First Amendment (because the compelled speech is personal, on matters of public concern, *id.* at 905). Put another way, the test is whether the speech is within the employee's "official duties" and "part of what the employee is paid to do." *Janus*, 585 U.S. at 905, 908; *Garcetti*, 547 U.S. at 421. The ordinary job duties of Plaintiff's members do not include speaking to members of the public about the Department's views on the cause of the government shutdown.

The *Pickering* balance of interests comes out the same way. Partisan messages sent from an individually named email address threaten the employee's professional reputation and the employee's interest in not being associated with speech that they would prefer not to make—including because, at a minimum, it may create the appearance of carelessness with respect to Hatch Act prohibitions. The government has no legitimate interest in using individual employee email accounts for political speech. No partisan finger-pointing is necessary to serve the only legitimate government interest at play: letting an external stakeholder know that a particular federal employee whom they are trying to reach is temporarily unavailable. An ordinary, nonpartisan out-of-office message would suffice.

**6.** The conclusion that requiring federal employees to attach their names to political speech is unlawful is consistent with cases that have long recognized that the First Amendment protects public employees against being forced to adopt political beliefs as a condition of their employment. "The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and

associate, or to not believe and not associate." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76

(1990). Requiring public employees to provide "support for the favored political party . . .

unquestionably inhibits protected belief and association." *Elrod v. Burns*, 427 U.S. 347, 359

(1976) (plurality opinion). Doing so both implicates employees' right to free belief and erodes

the value of nonpartisan civil service: "[I]t is not only important that the Government and its

employees in fact avoid practicing political justice, but it is also critical that they appear to the

public to be avoiding it, if confidence in the system of representative Government is not to be

eroded to a disastrous extent." *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-

CIO*, 413 U.S. 548, 565 (1973).

        In sum, both the earlier and current versions of the out-of-office messages that the

Department set for its employees violate the First Amendment.

**IV.    This Court has jurisdiction over Plaintiff's claim.**

        The Civil Service Reform Act (CSRA) and its implied exhaustion of administrative

remedies for challenges to prohibited personnel practices pose no barrier to this suit. Plaintiff is

not alleging any personnel-related claim that would be subject to the CSRA's review scheme. In

fact, Plaintiff is alleging the opposite: that the government is violating its members' First

Amendment rights by compelling speech beyond the scope of their employment. Plaintiff's

claim is not "of the type Congress intended to be reviewed within" the statutory scheme. *See

Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994).

        As the D.C. Circuit has held, the CSRA's exhaustion requirement does not apply to

constitutional claims "seeking declaratory and injunctive relief" that "stand[] independently" of

any claim under the CSRA. *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996).

In *Weaver*, an agency employee was orally admonished for violating a pre-publication review

policy and sued in district court to challenge both the reprimand, under the CSRA, and the pre-

18

publication review policy, directly under the First Amendment. *Id.* at 1432. The D.C. Circuit affirmed the dismissal of the CSRA claim on exhaustion grounds but allowed her constitutional claim to proceed to the merits. The court reasoned that the constitutional claim "stands independently" of the admonishment, because the plaintiff could "promptly refile her complaint shorn of references to her refusal to observe the review requirement and the resulting admonishment." *Id.* at 1434. If she did so, "the district court would have jurisdiction over such a suit, framed as a simple pre-enforcement attack on a regulation restricting employee speech," in contrast to an "ordinary case of a failure to exhaust CSRA remedies, in which the employee would have no claim that she could file directly in federal court if isolated from her claims for relief from a personnel action against her." *Id.*

Not all constitutional claims are subject to the CSRA. Here, where the case does not challenge a change to "working conditions" within the meaning of the statute, a constitutional claim may be brought directly in district court, without CSRA exhaustion. *Turner v. Agency for Global Media*, 502 F. Supp. 3d 333, 366–67 (D.D.C. 2020) (citing 5 U.S.C. § 2302(a)(2)(A)(xii)). "[C]ourts have determined that the term 'working conditions' generally refers to the daily, concrete parameters of a job, for example, hours, discrete assignments, and the provision of necessary equipment and resources." *Id.* at 367. Thus, in *Turner*, this court concluded that a challenge to agency "defendants' alleged transformation … of [Voice of America] and [associated] networks from media outlets committed to editorial and journalistic independence and integrity into 'organ[s] of state media' that actively suppress the First Amendment rights of their employees" was not subject to exhaustion under the CSRA, because the constitutional claim did "not allege a change in the conventionally understood circumstances of her employment, like a change in schedule or chain of command." *Id.*

19

Likewise, here, Plaintiff is not challenging any change in the conventionally understood circumstances of employment of its members. Indeed, the Department here has not taken any personnel action against any individual employee. Instead, the agency has acted across the board to edit all employees' out-of-office messages, with the same constitutional effect as the paradigmatic regulation restricting employee speech that *Weaver* recognized may be challenged directly without the need to exhaust administrative remedies. In fact, employees do not even have a way to subject themselves to an adverse personnel action through noncompliance because changing the out-of-office message only leads to a reverting of the out-of-office message to the partisan language. *Supra* Background Section II. This case thus presents "a constitutional claim that under First Amendment principles is as final, ripe and free from exhaustion difficulties as it need be, and that [Plaintiff] has standing to pursue," *Weaver*, 87 F.3d at 1434, and the CSRA is no obstacle to this Court's resolution of the merits.

A finding of preclusion would plainly foreclose all meaningful judicial review. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) (noting that the first *Thunder Basin* factor asks whether a finding of preclusion would foreclose meaningful judicial review). Plaintiff alleges ongoing First Amendment injury because the government is forcing its members to speak during a lapse in appropriations. But the Office of Special Counsel and the Merit Systems Protection Board, the two administrative bodies that would even arguably hear Plaintiff's claim, are both shut down due to that lapse. OSC's website states: "Due to a lapse in appropriations, the U.S. Office of Special Counsel is closed. Complaints may still be filed, but most will not be addressed until OSC reopens."[10] Likewise, a press-release on the MSPB's website states that "[d]ue to the partial shutdown of the federal government … [the MSPB] has ceased all

---

[10] U.S. Off. of Special Couns., https://perma.cc/KSW4-N7EU.

operations."[11] There is no way for Plaintiff to receive meaningful review other than through this

Court's jurisdiction. Congress could not have impliedly required Plaintiff's claim—which

challenges uniquely shutdown-related conduct that will last only for the duration of the

shutdown—to be raised in an administrative process that is itself shut down. *Cf. Nat'l Ass'n of*

*Immigr. Judges v. Owen*, 139 F.4th 293, 304 (4th Cir. 2025) (CSRA exhaustion applies only

when the CSRA is "functioning as Congress intended.").

## V.    A declaratory judgment and permanent injunctive relief are appropriate remedies.

Plaintiff is entitled to a declaratory judgment that both forms of the out-of-office

messages violate the First Amendment. Under the Declaratory Judgment Act, "any court of the

United States . . . may declare the rights and other legal relations of any interested party seeking

such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In

determining whether to exercise their discretion to grant declaratory relief, courts may consider

various non-dispositive factors, including "the public importance of the question to be decided."

*Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976). In the D.C. Circuit, "declaratory

judgment will ordinarily be granted only when it will either 'serve a useful purpose in clarifying

the legal relations in issue' or 'terminate and afford relief from the uncertainty, insecurity, and

controversy giving rise to the proceeding.'" *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C.

Cir. 1980) (quoting Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941)); *see also New*

*York v. Biden*, 636 F. Supp. 3d 1, 31 (D.D.C. 2022).

A declaration would serve those ends. Whether a federal agency may use its employees

as involuntary mouthpieces for the Administration's partisan agenda is a question of significant

public importance. A declaration would clarify that employees were compelled to speak against

---

[11] U.S. Merit Sys. Prot. Bd., *Status of the U.S. Merit Systems Protection Board During a Partial Government Shutdown* (Oct. 1, 2025), https://perma.cc/F43E-JEZA.

their will, which would mitigate (although not fully repair) employees' reputational harms. Finally, a declaration would vindicate employees' First Amendment rights and provide a measure of dignitary relief.

Plaintiff is also entitled to permanent injunctive relief. A plaintiff seeking a permanent injunction must demonstrate that: (1) they have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). The first two factors "are often considered together," *Grundmann v. Trump*, 770 F. Supp. 3d 166, 187 (D.D.C. 2025), and the latter two merge when the defendant is the government, *see Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2023).

Dragging unwilling federal employees into an ongoing partisan debate causes irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quoting *Elrod*, 427 U.S. at 373 (plurality opinion)). Compelled speech causes uniquely irreparable harm. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning…." *Janus*, 585 U.S. at 893. Affected federal employees have been unable to do anything to avert the harm. In fact, some employees tried to change their out-of-office messages to a version that straightforwardly says that they are out of the office without a partisan statement—as the Department originally instructed employees to do when they were first furloughed. F. Doe Decl. ¶¶ 7–10; *supra* n.7. To their surprise, they found that their out-of-office messages were again reverted to the partisan language. *Id.* The use of

technology to force words into employees' mouths is an extraordinary form of compelled speech that cannot be addressed by remedies available at law.

The balance of equities decidedly favors the public interest in safeguarding First Amendment rights against unlawful government infringement. There is no legitimate government interest, or public interest, in unlawful action. "[T]he Constitution is the ultimate expression of the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). "[G]overnment actions in contravention of the Constitution are 'always contrary to the public interest.'" *Turner*, 502 F. Supp. 3d at 386 (quoting *Gordon*, 721 F.3d at 653).

The Trump Administration has had ample other means to communicate its message to the public. The President has the power to "us[e] the office's 'bully pulpit' to persuade Americans, including by speaking forcefully or critically, in ways that the President believes would advance the public interest." *Trump v. United States*, 603 U.S. 593, 629 (2024). Political leaders in the Trump Administration also have powerful voices in public discourse. The government has no legitimate interest in forcing nonconsenting employees to amplify a message that its leadership can speak loudly enough. This "lack of a compelling interest supporting" the government's challenged action has a significant bearing on the balance of the equities. *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2364 (2025).

### CONCLUSION

The Court should grant Plaintiff's motion for summary judgment and provide the relief described in the attached proposed order.

Respectfully submitted,

*/s/ Tsuki Hoshijima*

Cormac Early (D.C. Bar No. 1033835)        Tsuki Hoshijima (MA Bar No. 693765)
Allison Zieve (D.C. Bar No. 424786)         Christine L. Coogle (D.C. Bar No. 1738913)
PUBLIC CITIZEN LITIGATION GROUP             Jyoti Jasrasaria (D.C. Bar No. 1671527)
1600 20th Street NW                          Robin F. Thurston (D.C. Bar No. 7268942)

23

Washington, DC 20009
202-588-1000

Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Plaintiff*